UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/15/26

MICAELA BRACAMONTE,

Plaintiff,

-v-

THE LANG SCHOOL, GAVIN SIMMS, and PETER FLOM,

Defendants.

No. 25-cv-5416 (MKV)

OPINION AND ORDER GRANTING MOTION TO DISMISS

MARY KAY VYSKOCIL, District Judge:

Plaintiff Micaela Bracamonte brings this action alleging that her former employer, The Lang School, and two members of its board, Peter Flom and Gavin Simms, discriminated and retaliated against her in multiple ways when they, *inter alia*, terminated her "in part" for napping during the workday, resisted hiring a Diversity Equity and Inclusion ("DEI") director, and criticized Plaintiff for being "aggressive," terrorizing her staff, and "not being able to get along" with parents [ECF No. 11 ("AC") ¶¶ 50, 53, 58, 61, 68]. Plaintiff also asserts that The Lang School breached an alleged promise to pay her for past work "when economically feasible." AC ¶ 156. Defendants move to dismiss the action for failure to state a claim [ECF No. 14].

Plaintiff complains that Defendants did not share her ideological agenda for the school and understanding of herself. However, no law required Defendants to share Plaintiff's worldview. In particular, Defendants' alleged resistance to embracing DEI as "a greater focus at the school" is not tantamount to an allegation of racial discrimination against Plaintiff, and her subjective belief that she was stereotyped is insufficient to infer that Defendants acted with discriminatory intent. AC ¶ 78; *see id.* ¶¶ 70, 81. In addition, Plaintiff's pleading is replete with allegations that are clearly stale, about actions by non-parties, conclusory, and contradicted by her own, more specific,

factual allegations. Furthermore, while Plaintiff now contends that her alleged disabilities entitled her to leeway, she fails to allege that she ever informed Defendants that she needed to nap during school hours as an accommodation for a disability. *See id.* ¶¶ 63–65, 106. Insofar as Plaintiff arguably states any claim for disability discrimination under the New York City Human Rights law, the Court declines to exercise supplemental jurisdiction over it. Thus, for all of the reasons set forth below, Defendants' motion to dismiss is GRANTED.

## I. BACKGROUND

### A. Facts[1]

Plaintiff Micael Bracamonte is a "woman of West African, Peruvian, and French Descent." AC ¶ 15. She "identifies as a Brown woman, not as a white woman." *Id.* ¶ 16. She has "ADHD, Dysgraphia (which inhibits her ability to hand write), and Generalized Anxiety Disorder." *Id.* ¶ 17. She "was 57 at the time of her termination." *Id.* ¶ 15.

Defendant The Lang School is an independent school in downtown Manhattan. *See* AC ¶¶ 11, 32. Defendant Peter Flom was chairman of the board of the school for an unspecified period including during 2021. *See id.* ¶ 50. According to Plaintiff, "Flom informally relinquished control over the Board to Defendant [Gavin] Simms" in February 2022. *Id.* ¶ 80.

Plaintiff allegedly "founded The Lang School in 2009 and served as Head of School until her termination on June 30, 2022." AC ¶ 20; *see id.* ¶ 152 ("Plaintiff founded The Lang School with her husband in 2009."); *id.* 135 ("Plaintiff was terminated on June 30, 2022 at 4 pm during a board meeting . . . ."). According to Plaintiff, "The Lang School underwent board transitions that ultimately led to" Flom and Simms "coming to power," but Plaintiff does not say when, during her tenure, the individual defendants joined the board. *Id.* ¶ 3.

[1] The facts are taken from the Amended Complaint [ECF No. 11 ("AC")] and, for the purpose of this motion, are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff divides her pleading into allegations supposedly related to "Gender and Sex Discrimination," alleged "Race Discrimination," alleged "Retaliation for Complaints of Discrimination and Disability Discrimination," alleged "Additional Disability Discrimination Facts," alleged "Age Discrimination," and alleged "Breach of Contract Facts." AC at 3, 8, 10, 15, 16 (emphases omitted). However, her allegations do not all fit neatly under these headings, which do not precisely track her claims, and she repeats some of the same allegations several times. As such, the Court has attempted to construct a chronological account.

Plaintiff alleges that "since the school's opening," Plaintiff "had announced the need for – due to her ADHD and Generalized Anxiety Disorder –" an accommodation allowing her "to arrive in the office . . . between 9 and 9:30 am," even though "teachers started at 8:00 am." AC ¶¶ 106, 108. "Plaintiff [also] made it known that she worked very late hours for the school on weekdays and on weekends." *Id*. ¶ 107.

Plaintiff alleges that in 2012 she was "sexually assaulted" by a security guard at The Lang School. AC ¶ 25. She alleges that she "reported this to the board at the time," but there is no indication whether the board included Flom and Simms. *Id.* ¶ 26. According to Plaintiff, the 2012 board "demanded that Plaintiff not report the altercation to the police." *Id.*

Plaintiff next alleges that in 2016 she fired a newly-hired employee "for not showing adequate engagement with [his] work and being disrespectful" to "a female member of the school leadership team." AC ¶ 27. The fired employee "filed a complaint against the school, and Plaintiff was subsequently questioned about the termination." *Id.* ¶ 28. Plaintiff allegedly stated that she "was uncomfortable around [the fired employee] because he would 'check her out.'" *Id.* ¶ 29. "A now-retired Skadden Arps attorney, Ken Plevan," who is not a party to this case and whose connection to the parties is not clear, allegedly "agreed with an insurance attorney," another non-

party with no clear connection, who allegedly "stated that this was Plaintiff's fault as she was 'begging to be checked out' based on her attire." *Id.* ¶ 30.

Plaintiff also alleges that in 2017 she "was sexually harassed at a 'The Guild of Independent Schools of New York' event" by "the found/head" of a "competing middle/high school," who is not a party to this case. AC ¶ 32. According to Plaintiff, the 2017 board "did nothing" to "address this issue when it was brought to their attention" and allegedly "instructed Plaintiff to do nothing." *Id.* ¶ 33. Plaintiff never alleges that Flom and Simms were on the board at that time.

At an unspecified time, Plaintiff was "chastised for 'aggressive behavior'" by unspecified people. AC ¶ 36. Jerome Lande, a "former board chairperson," who is not a party, told Plaintiff that she had "to apologize for . . . 'being aggressive yet again'" and was "'skating on thin ice at this point.'" *Id.* ¶¶ 24, 40. Plaintiff asserts that "it was not true" that she was aggressive but, rather, she "was simply a woman in the workplace with a direct, confident personality" that "was not received well" by a "male-dominated board." *Id.* ¶¶ 37, 39.

Plaintiff alleges that, in order "[t]o support the school, and to prevent financial ruin, Plaintiff forewent her salary and was underpaid for her work for years," but she does not allege which years. AC ¶ 153. At an unspecified time, "Plaintiff offered a personal loan, approximately $100,000, to the school that was eventually paid back via board resolution and vote." *Id.* ¶ 154. In addition, "Plaintiff and her husband forwent approximately $700,000 in underpayment and nonpayment of salary in the school's early years and continued to be underpaid or go without school-paid health insurance . . . ." *Id.* ¶ 155. "On September 26, 2019, The Lang School board held a formal meeting in which the Board confirmed a 'promise to pay back such funds' when economically feasible." *Id.* ¶ 156. "The Board . . . has not repaid[] this amount to Plaintiff." *Id.*

¶ 170. Plaintiff further alleges that, at some point "prior to her constructive termination,[2] Plaintiff was promised a pay increase to $400,000 with a retroactive attachment," but she "never did have her salary increased." *Id.* ¶¶ 171, 172.

"In February 2020," at a board meeting, Plaintiff "asserted that The Lang School needed a more ethnically/racially diverse board and DEI training for the existing board." AC ¶ 72. Plaintiff further asserted that she had a "unique" perspective on various matters "as a result of her being the one person of color on the board." *Id.* ¶ 73. "Defendant Flom laughed at her and said, 'What are you talking about? You're white.'" *Id.* ¶ 74. "Plaintiff gently corrected him, stating that she was a person of color – specifically, Brown – and he laughed again, stating that he'd always seen her as white, and that she was white, and looked right and left to other members of the board to concur." *Id.* ¶ 75. "No one concurred" or met Flom's "gaze." *Id.* ¶ 76.

From "March 2020 through May 1, 2021," The Lang School was "completely remote because of Covid-19." AC ¶ 41. In the interim, "[o]n April 1, 2020, Plaintiff was involved in a severe car accident that led to concussions [sic], broken bones, and her sense of balance and directional hearing were impaired [sic]." *Id.* ¶ 136.

Shortly after in-person work resumed in May 2021, Plaintiff "complained" that a "white male coworker named Chris" was dressing inappropriately. *Id.* ¶ 42. Plaintiff contends that "Chris" thereafter "began physically and verbally intimidating" her. *Id.* She further alleges that she emailed Flom, who was now the board chair, "stating that she did not feel safe around Chris" and mentioning the 2012 sexual assault "as a basis for her fear." *Id.* ¶ 43; *see id.* ¶ 50. Plaintiff alleges that Flom asked Plaintiff whether she was "sure it wasn't in [her] imagination," if "anyone else [saw]" the alleged misconduct, and if there was anything she could "do to get along with"

[2] Plaintiff elsewhere alleges that she was expressly "terminated on June 30, 2022 at 4 pm during a board meeting." AC ¶ 135. She does not explain why, here, she states that she was constructively terminated. *See id.* ¶ 171.

Chris. *Id.* ¶¶ 43–44. Plaintiff broadly asserts that "Flom repeatedly chastised Plaintiff . . . for 'not getting along' with white male[s]" who, Plaintiff contends, "sought to dominate her in ways disconsonant with the school's values or who sought to abuse her." *Id.* ¶ 48.

Plaintiff alleges that, in or about the spring of 2021, she "offered that the school should hire a DEI director." AC ¶ 49. Plaintiff alleges that Flom, "as board chair," responded that "the school couldn't afford to hire a DEI director" and, "instead, proposed hiring a consultant for a one-hour DEI course." *Id.* ¶ 50. Plaintiff further asserts that "every instance" of her pushing to make DEI "a greater focus at the school was met with antagonism." *Id.* ¶ 78. As her own pleading elsewhere makes clear, however, Plaintiff did, nevertheless, hire a "Director for DEI . . . by sacrificing budgeted funds set aside to hire an executive assistant for herself. *Id.* ¶ 89. Plaintiff alleges that after she was terminated, Defendants "immediately demoted" the DEI director, "a woman of color," from "a school leadership position." *Id.*

"Also in 2021, a belligerent white, male parent called demanding that his son return to school in person despite not being in compliance with The Lang School's Covid-19 policies." *Id.* ¶ 51. "Plaintiff passed the call onto . . . Flom at the parent's request." *Id.* ¶ 52. Thereafter, Flom "chastised Plaintiff for 'not being able to get along' with the parent." *Id.* ¶ 53.

At another point in 2021, while "Flom and Plaintiff were interviewing candidates for the school's strategic plan consultancy role," Flom allegedly "chastised Plaintiff about 'not being able to get along with others.'" AC ¶ 54. Plaintiff asserts that Flom "was more interested in hiring" a man. *Id.* ¶ 55. However, "Flom and Plaintiff hired a woman for the role." *Id.* Plaintiff alleges that Flom thereafter "called the new hire 'an idiot' and 'not the brightest bulb' as she worked on a report about the status of the school." *Id.* ¶ 56. Plaintiff further asserts, generally, that Flom "made disparaging statements" about "women in the workplace" but not men. *Id.* ¶ 57.

At unspecified times, "Plaintiff was chastised by male employees for taking naps during her lunch breaks." AC ¶ 58. In particular, "Plaintiff had a sign on her door of a cat that indicated she was taking a 'cat nap' and was mocked for the practice." *Id.* ¶ 62. In connection with her practice of sleeping "during the work day," Plaintiff alleges that, in addition to her aforementioned disabilities, she has "pernicious anemia." *Id.* ¶ 59. She asserts that her daily nap during school hours "was not simply to sleep, but [also] was to clear her mind, and mitigate her ADHD and other disabilities." *Id.* ¶ 63. Thus, she asserts, it "was an accommodation for her disabilities." *Id.* ¶ 65. However, Plaintiff does not allege that she ever requested or received approval to sleep during the workday as an accommodation for any disability. She alleges that, at some unspecified point in time, she had a "medical procedure [that] alleviated the need for the practice." *Id.* ¶ 59. Plaintiff also alleges that "Defendants, in part, made the decision to terminate Plaintiff based on the report about her 'naps' at work."[3] *Id.* ¶ 61.

Plaintiff contends that her "husband, a white man, who was also co-Head of School like her, also slept for half an hour during the workday" but "never received any negative response for the practice." AC ¶ 60. She alleges that he "utilized a similar sign of an otter" to indicate that he was napping "and this was never mocked." *Id.* ¶ 62. (Plaintiff does not contend that her non-party husband's daily nap was related to any disability.) However, Plaintiff expressly alleges that her husband "was constructively terminated shortly after her." *Id.* ¶ 147.

---

[3] Plaintiff does not explain what she means by "*the* report about her 'naps' at work." AC ¶ 61 (emphasis added). The Court infers that one or more of the "employees" who allegedly "chastised" Plaintiff for her practice of sleeping during the school day also reported the practice to the Board. *Id.* ¶¶ 58, 61. This logical inference simply underscores what is otherwise clear on the face of her pleading: Plaintiff did not seek, let alone receive, an accommodation from the Board allowing her to sleep at work. Moreover, it is not clear why, in paragraph 61, Plaintiff places the word "naps" in quotation marks, since her pleading makes abundantly clear that she was, in fact, napping at work on a daily basis. *See id.* ¶ 59 (expressly alleging that Plaintiff "would sleep for a half an hour during the work day until a medical procedure alleviated the need for the practice"); *see also id.* ¶ 64 (alleging that Plaintiff's practice of sleeping at work was "a structured lapse in her day," unless others "request[ed]" that she "end a nap and make herself available to speak about [a] matter of urgency").

"In February 2022, Defendant Flom informally relinquished control over the Board to Defendant Simms." AC ¶ 80. Plaintiff accuses Simms of "thereafter" making "unprovoked and unjustified attacks against Plaintiff." *Id.* ¶ 81. Her examples of his purported "attacks against Plaintiff" consist of, first, Simms taking the position that, in his view, "'a major investment' in DEI" had yielded "little, if any improvement" at the investment bank at which he worked. *Id.* ¶¶ 81–82. In addition, at some point, "Simms stated Plaintiff was '95 percent really great and 5 percent I don't know' as he shook his head negatively." *Id.* ¶ 85. Furthermore, Plaintiff asserts that Simms, like others, "called Plaintiff 'aggressive'" and suggested she "get a 'communication coach'" to address this perception. *Id.* ¶¶ 86, 87.

Plaintiff alleges that, at some unspecified time, she "sought to hire a woman of color to operate in a human resources capacity," but that person "was not hired." AC ¶ 88. Plaintiff offers no further factual allegations on this point. However, she broadly accuses Defendants of "almost always . . . reject[ing] women of color from positions of power." *Id.* ¶ 92. Plaintiff further asserts, in wholly conclusory fashion, that Flom and Simms "may very well be a racist [sic]," and "that i[s] something that will be subject to discovery," since, Plaintiff asserts, they "undertook the same actions a racist might take." *Id.* ¶ 95.

Plaintiff also alleges that, during an unspecified time period, she "would intermittently request late arrivals in order to attend physical and occupational therapy sessions at NYU Langone's Concussion Center." AC ¶ 109. She alleges that these "requests were denied and complained about by staff and the board." *Id.* ¶ 110. Plaintiff further alleges that she attempted to have "remote occupational and physical therapy sessions in the school's gym at times coordinated with the school's gym teacher," but "students, staff, and faculty continuously interrupted those sessions, which were terminated." *Id.*

"On April 10, 2022, Plaintiff was brought into a surprise meeting to discuss a complaint against her." AC ¶ 97. Plaintiff does not divulge the nature of the complaint against her. She alleges that she had previously been told that "the meeting was not about her performance" and that she "had never [previously] been told that her employment was at threat to end." *Id*. ¶¶ 97, 98. She alleges that once she "was brought into this meeting[,] which immediately spiked her anxiety[,] . . . . the nature of this meeting became clear." *Id*. ¶¶ 99, 100.

According to Plaintiff, at the April 10, 2022 meeting, "Flom began reading a prepared statement." AC ¶ 100. Plaintiff alleges that, at this point, she "explicitly requested a limited accommodation in the form of recording the conversation for review later," "asked Defendants to send her the documents that were read-aloud given her dysgraphia, and ask for the verbalized new expectations of her to be put in writing." *Id.* ¶ 100. She alleges that "Defendants denied these requests in full without justification." *Id.* ¶ 101. "Instead, Defendant Flom agreed to read his prepared statement slowly so Plaintiff could write it word for word." *Id.* ¶ 102. Plaintiff alleges that she "stated that her ADHD, anxiety, and dysgraphia were likely to render her handwriting illegible, which proved true." *Id*. Plaintiff further alleges that "[t]he school's attorney did not read the school's new professional expectations of Plaintiff slowly." *Id*. "Defendants then announced that an investigation would be conducted." *Id.* ¶ 104.

"In April 2022, Plaintiff told Defendant Simms that if The Lang School had an HR department, she would be reporting him for what seemed to be sexist and racist remarks . . . ." AC ¶ 96. Plaintiff does not say whether this occurred before or after the April 10, 2022 meeting. However, she does generally assert that the "the investigation in April 202[2]" was "launched out of retaliation" (retaliation for *what* is left to speculation). *Id*. ¶ 111.

Plaintiff contends that the investigation was unfair, and "Defendants were simply trying to

generate a reason to terminate Plaintiff." AC ¶ 112. Plaintiff alleges that she "asked for two weeks of additional time to comply with the investigation and to gather, organize, and offer evidence of her innocence," but this request was denied. *Id.* ¶¶ 111, 112. Plaintiff further alleges that "the investigator hired by Defendants did not interview all of the witnesses Plaintiff requested be interviewed" and that "Plaintiff's witnesses were – upon belief and information – asked completely different questions than the Defendants' witnesses and with far greater brevity." *Id.* ¶ 113.

Thereafter, on June 2, 2022, Plaintiff "made a complaint directly to Defendants." AC ¶ 115. She "complained that 'there is 'a certain amount of racism involved here'" and "there is 'a certain amount of sexism involved here.'" *Id.* ¶¶ 117, 118. Plaintiff informed the Board of her opinion that, if they disagreed, it was "a function of the fact that [they are] all white and . . . mostly men." *Id.* ¶ 119. She specifically "expressed" her belief that "she is not aggressive in her communication style" but rather that "label [was] improperly, and unfairly, placed on her as a woman of color in the workplace." *Id.* ¶ 121. She went on to say that the DEI Director she had hired had "introduced [her] to a world of people of color who actually understand [her] voice and sound like [her]" whereas the Board had "no idea." *Id.* ¶ 122.

According to Plaintiff, "Flom then stated[,] 'There's no point to this. You're not willing to listen.'" AC ¶ 123. Plaintiff responded that it was "up to" Flom whether he could "handle it." *Id.* ¶ 124. Flom allegedly "screamed . . . 'No, you can't handle anything, Micaela' and began to exit the meeting." *Id.* ¶ 125. "While exiting," Flom allegedly "yelled[:] 'I'm not putting up with this crap anymore. Everybody lets you do whatever the [expletive] you want all the time. You terrorize the staff. It's ridiculous. You don't take criticism. And everybody says this. Everybody.'" *Id.* ¶ 126.

Plaintiff alleges that, thereafter, Simms stated that she "may think that this is skewed by

the makeup of the board, and that may be[,] [b]ut at the same time, this is where we are now." AC ¶ 128 (emphasis omitted). According to Plaintiff, she then mentioned that Flom had "told [her] twice at a [previous] meeting that he thinks of [her] as white." *Id.* ¶ 130. Simms responded that he believed Flom had merely been "saying[,] 'Oh, I didn't know until you told me that you were a person of color.'" *Id.* ¶ 131.

"Plaintiff was terminated on June 30, 2022 at 4 pm during a board meeting." AC ¶ 135. Plaintiff was "asked not to record" the meeting, at which "the board's stated reasons for her termination were . . . conveyed verbally." *Id.* Plaintiff does not relay all of the Board's stated reasons for her termination, but she indicates that they included that "she had been late to work" and had a practice of sleeping during the workday. *Id.* ¶ 139 ("one basis for her termination was that she had been late to work"); *see id.* ¶ 61 ("Defendants, in part, made the decision to terminate Plaintiff based on the report about her 'naps' at work.").

Plaintiff alleges that "[a]t about the time Plaintiff was terminated, Defendant[s] began to 'clean house' of older employees." AC ¶ 145. She specifically alleges that her "husband, who was over forty, was constructively terminated shortly after her." *Id.* ¶ 147. She further alleges, "upon information and belief" only, "the Creative Director for The Lang School, who was over forty," was "terminated, or constructively terminated, shortly after" Plaintiff. *Id.* ¶ 148. She alleges that, "a year [later]," a French teacher, who was over forty, was terminated." *Id.* ¶ 149. Plaintiff alleges that "Simms effectuated the aforementioned terminations, and premised it on the idea that these individuals 'made too much money.'" *Id.* ¶ 150.

**B. Procedural History**

Plaintiff, who is represented by counsel, initiated this action by filing a complaint in June 2025 [ECF No. 1 (the "Original Complaint")]. Defendants, acting in accordance with the Court's

Individual Rules of Practice in Civil Cases, filed a pre-motion letter requesting leave to file a motion to dismiss the Original Complaint for failure to state a claim and outlining their arguments for dismissal [ECF No. 7]. Plaintiff filed a letter in response, noting her intention to amend the Original Complaint [ECF No. 8].

The Court thereafter issued an order setting a schedule for Plaintiff to amend and briefing of Defendants' contemplated motion to dismiss [ECF No. 10 ("Scheduling Order")]. In the Scheduling Order, the Court warned: "Plaintiff has received notice of Defendants' arguments regarding asserted deficiencies with her claims in Defendants' pre-motion letter. **This will be Plaintiff's last opportunity to amend the complaint to cure any deficiencies identified in the letter.**" Scheduling Order at 1 (emphasis in original).

Plaintiff thereafter filed the Amended Complaint, in which she purports to assert nine claims [ECF No. 11 ("AC")]. First, she purports to assert a claim of race discrimination under both 42 U.S.C. § 1981(a) ("Section 1981") and the New York City Human Rights Law ("NYCHRL"). AC ¶¶ 174–84 ("First Claim"). Plaintiff alleges that she "is a woman of color," that "Defendants, at all times, knew Plaintiff was a woman of color," that Defendants "harassed" and "terminated Plaintiff because she is a woman of color," and that "Defendants subjected Plaintiff to a hostile work environment because she is a woman of color." *Id.* ¶¶ 178–83. Second, Plaintiff purports to assert a claim of retaliation under 42 U.S.C. § 1981(a) and the NYCHRL "for her complaints of race discrimination". *Id.* ¶¶ 185–98 ("Second Claim").

Third, Plaintiff asserts a claim of "[f]ailure to provide reasonable accommodations as required by the [NYCHRL]." AC at 20 (emphasis omitted); *see id.* ¶¶ 199–208 ("Third Claim"). Fourth, she asserts a claim of "[t]ermination as a result of disability discrimination in violation of the [NYCHRL]." *Id.* at 21 (emphasis omitted); *see id.* ¶¶ 209–17 ("Fourth Claim"). Fifth, she

asserts a claim of "[r]etaliation for complaints of disability discrimination under the [NYCHRL]." *Id.* at 22 (emphasis omitted); *see id.* ¶¶ 218–28 ("Fifth Claim").

Next, Plaintiff asserts a claim of "[r]etaliation based on Gender/Sex under the New York City Human Rights Law." AC at 23 (emphasis omitted); *see id.* ¶¶ 229–37 ("Sixth Claim"). Notably, while she places allegations under the heading "**Gender and Sex Discrimination**" in the "**<u>STATEMENT OF FACTS</u>**" section of the Amended Complaint, Plaintiff does not assert a claim of discrimination based on sex or gender. *Id.* at 2–3 (emphases in original); *see id.* ¶¶ 25–69; *see also id.* ¶¶ 229–37. Rather, she alleges that she "*complained* that she was being discriminated against because . . . . she is a woman," and "Defendants then terminated Plaintiff for making these complaints." *Id.* ¶¶ 234–36 (emphasis added).

For her Seventh Claim, Plaintiff asserts "Breach of Contract against Defendant The Lang School." AC at 24 (emphasis omitted); *see id.* ¶¶ 238–44 ("Seventh Claim"). She alleges that she "loaned, through a variety of means, approximately $1,000,000, of which $700,000 is derived from deferred salaries, to The Lang School." *Id.* ¶ 239. She further alleges that "[i]n recognition of this, the board of The Lang School voted to repay Plaintiff and her husband $700,000." *Id.* ¶ 240. Plaintiff asserts that "[t]he board vote was a promise." *Id.* ¶ 241.

Plaintiff next asserts a claim of age discrimination under the federal Age Discrimination in Employment Act ("ADEA") and the NYCHRL. AC ¶¶ 245–54 ("Eighth Claim"). Finally, she asserts a claim of "Intersectional Discrimination under 42 USC 1981(a) and the New York City Human Rights Law." *Id.* at 26 (emphasis omitted); *see id.* ¶¶ 255–67 ("Ninth Claim"). Plaintiff seeks damages and attorneys' fees. *See id.* at 27–28.

Defendants responded to the Amended Complaint by filing a motion to dismiss [ECF Nos. 14, 15 ("Mem.")]. Plaintiff filed a memorandum of law in opposition to the motion to dismiss

[ECF No. 16 ("Opp.")]. Defendants filed a reply [ECF No. 19 ("Reply")].

## II. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads *factual* content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (emphasis added). The allegations must raise "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Moreover, courts do not "credit conclusory allegations or legal conclusions couched as factual allegations." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188–89 (2d Cir. 2020) (alteration adopted) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)).

## III. DISCUSSION

Plaintiff fails to adequately allege any of her nine claims. Plaintiff seems to imagine that her accusations of discrimination, retaliation, and unfairness themselves bear weight. She treats marshaling factual allegations in support of such accusations as an afterthought. Her opposition to Defendants' motion to dismiss is similar to her pleading in this regard. Below is an illustrative excerpt from Plaintiff's brief:

> **4. Plainitff was subjected to age discrimination.**
>
> Rather than reiterate each and every paragraph verbatim, Plaintiff contends that, at minimum, paragraphs 145-151 all support her allegations of age discrimination.

Opp. at 5. The cited paragraphs, in turn, are completely devoid of factual allegations necessary to state a claim for age discrimination, as explained below. *See* AC ¶¶ 136–151; *infra* at 41. Indeed,

Plaintiff consistently fails to allege facts necessary to raise "more than a sheer possibility" that Defendants "acted unlawfully." *Iqbal*, 556 U.S. at 678.

### A. Plaintiff Fails To State a Claim of Discrimination Based on Race (First Claim).

Under the heading "**FIRST CLAIM**" in the Amended Complaint, Plaintiff lumps together two causes of action for discrimination based on race, one under 42 U.S.C. § 1981 ("Section 1981") and another one under the NYCHRL. AC at 19 (emphasis in original); *id.* ¶¶ 174–84. The Court is required to assess these claims separately because the NYCHRL is more favorable to plaintiffs than federal law. *Mihalik v. Credit Agricole Cheuvreux N. America, Inc.*, 715 F.3d 102, 109 (2d Cir. 2013); *Albunio v. City of New York*, 16 N.Y.3d 472, 477, 947 N.E.2d 135, 137 (2011). The Court, however, concludes that Plaintiff fails to state a claim of race discrimination under either Section 1981 or the more lenient NYCHRL because Plaintiff fails to offer any non-conclusory allegations that plausibly link her termination to racial animus. Plaintiff similarly falls far short of stating a hostile work environment claim based on stray remarks which themselves do not evince discriminatory animus.

#### 1. Plaintiff Fails To State a Claim under Section 1981.

Section 1981 provides, in pertinent part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). The Second Circuit has interpreted this statute to prohibit employment discrimination based on race. *See Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 224 (2d Cir. 2004) ("This section thus outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment . . . ."). In

general, to state a claim under Section 1981, a plaintiff must allege: (1) she is a "member of a racial minority"; (2) the defendant's "intent to discriminate on the basis of race"; and (3) "discrimination concerning one of the statute's enumerated activities." *Felder v. United States Tennis Ass'n*, 27 F.4th 834, 848 (2d Cir. 2022) (alteration adopted) (quoting *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000), and citing *Comcast Corp. v. Nat'l Ass'n of Afr. American-Owned Media*, 589 U.S. 327 (2020)). To establish these elements in the context of employment discrimination cases, courts in this Circuit generally, explicitly or implicitly, require the plaintiff to allege an "adverse [employment] action under circumstances giving rise to an inference of discrimination." *Shamciyan v. Acacia Network, Inc.*, No. 22-cv-2122 (JPC), 2023 WL 6214546, at *5 (S.D.N.Y. Sept. 24, 2023);[4] *see also Mitchell v. Planned Parenthood of Greater New York, Inc.*, 745 F. Supp. 3d 68, 102 (S.D.N.Y. 2024).

Notably, "[t]he Supreme Court long ago made clear that Section 1981 'can be violated only by purposeful discrimination.'" *Alameda v. Ass'n of Soc. Work Boards*, No. 23-cv-6156 (KMK), 2024 WL 4302389, at *5 (S.D.N.Y. Sept. 25, 2024) (quoting *Gen. Bldg. Contractors Ass'n v. Pennyslvania*, 458 U.S. 375, 391 (1982)); *see Patterson*, 375 F.3d at 226 ("a plaintiff pursuing a claimed violation of § 1981 . . . must show that the discrimination was intentional"). More recently, the Supreme Court expressly held that Section 1981 requires the plaintiff to allege "but-for" causation. *Comcast*, 589 U.S. at 341 ("a plaintiff must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of [the] legally protected right."). Thus, a plaintiff asserting a claim of employment discrimination under Section 1981 must plausibly

[4] In applying this test in employment discrimination cases against the plaintiff's employer, some courts in this Circuit have required the plaintiff to allege each of the ordinary elements of a federal employment discrimination claim, namely: "(1) she was within [a] protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Shamciyan*, 2023 WL 6214546, at *5; *Kiseleva v. Greenspan*, 755 F. Supp. 3d 367, 378 (S.D.N.Y. 2024); *Hamilton v. Siemens Healthcare Diagnostics, Inc.*, No. 23-cv-7408 (KMK), 2025 WL 863572, at *16 (S.D.N.Y. Mar. 18, 2025).

allege that she would not have been terminated (or otherwise suffered an adverse employment action) "but for" the defendant's intentional discrimination based on her race. *Id.*; *see Felder*, 27 F.4th at 848. Moreover, the plaintiff must "nudge" her claim "across the line from conceivable to plausible" by alleging specific "facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference" of intentional discrimination based on her race. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84, 87 (2d Cir. 2015) (internal quotation marks and citations omitted, alteration adopted).

The Court assumes without deciding that Plaintiff adequately alleges that she is a "member of a racial minority" for purposes of the first element of her claim under Section 1981. *Felder*, 27 F.4th at 848. Plaintiff alleges that she "identifies as a Brown woman, not as a white woman." AC ¶ 16.[5] Since Defendants do not seek dismissal on this ground, there is no need for the Court to weigh in on whether alleging that one "identifies as . . . Brown" is tantamount to alleging that one is a member of a racial minority. *Id.*; *cf. Toussaint v. NY Dialysis Servs., Inc.*, 230 F. Supp. 3d 198, 213 (S.D.N.Y.), *aff'd*, 706 F. App'x 44 (2d Cir. 2017) (explaining, albeit in a different posture, that courts need not "make judgments about whether a certain individual is of a specific race" where "there is no serious fact dispute between the Parties").

Turning to the other elements of Plaintiff's Section 1981 claim, there is no question that Plaintiff alleges an adverse employment action.[6] Clearly, termination is an adverse employment

---

[5] As discussed below, there is an issue whether Flom, whom Plaintiff accuses of discriminating against her based on her race, "knew or believed" that Plaintiff was a member of a racial minority. *Toussaint v. NY Dialysis Servs., Inc.*, 230 F. Supp. 3d 198, 213 (S.D.N.Y.), *aff'd*, 706 F. App'x 44 (2d Cir. 2017); *see* AC ¶ 74 ("What are you talking about? You're white.").

[6] As noted above, to establish the second and third elements of a claim under Section 1981, a plaintiff must allege facts showing the defendant's "intent to discriminate on the basis of race" and "discrimination concerning one of the statute's enumerated activities." *Felder*, 27 F.4th at 848. To satisfy these elements in the context of an employment discrimination case, the plaintiff must allege an "adverse [employment] action under circumstances giving rise to an inference of discrimination." *Shamciyan*, 2023 WL 6214546, at *5.

action, and Plaintiff alleges that she was terminated. *Vega*, 801 F.3d at 79; AC ¶ 135. However, she fails to plausibly allege that she was terminated under circumstances giving rise to an inference of discrimination. *See Shamciyan*, 2023 WL 6214546, at *5.

In particular, Plaintiff fails to plausibly allege that Defendants intentionally discriminated against her based on her race as required for a claim under Section 1981. *See Patterson*, 375 F.3d at 226; *Alameda*, 2024 WL 4302389, at *5. Likewise, as Defendants stress, Plaintiff clearly fails to plausibly allege that her "race was a but-for cause of [her] injury." *Comcast*, 589 U.S. at 333; *see* Mem. at 8. Instead, Plaintiff's purported allegations of racial discrimination follow "the familiar faulty syllogism: something bad happened to me at work; I am (fill in the blank with one or more protected categories); therefore it must have happened because I am (fill in the blank with the applicable protected category/ies)." *House v. Wackenhut Servs., Inc.*, No. 10-cv-9476 (CM), 2012 WL 4017334, at *1 (S.D.N.Y. Aug. 20, 2012).

Plaintiff expressly asks the Court to "draw[] an inference of discriminatory animus" from her allegations that "Defendants opposed" hiring a DEI Director. Opp. at 9–10. However, her allegations do support any inference of discriminatory animus. As an initial matter, Plaintiff's own pleading makes clear that, notwithstanding any alleged initial opposition from Defendants, Plaintiff did, in fact, hire a DEI Director, a "woman of color." AC ¶ 89; *see id.* ¶ 122. Furthermore, even if Defendants had denied Plaintiff's request to hire DEI Director, Plaintiff would still fall far short of plausibly alleging that Defendants intentionally discriminated against Plaintiff based on her race. *See Patterson*, 375 F.3d at 226; *Alameda*, 2024 WL 4302389, at *5.

Plaintiff's allegations that Flom and Simms resisted her demands to make DEI "a greater focus at the school" do not support an inference of racial animus against Plaintiff. AC ¶ 78; *see Hanks v. City of Syracuse*, 2023 WL 8889764, at *2 (2d Cir. Dec. 26, 2023); *Mitchell*, 745 F. Supp.

3d at 96. Plaintiff herself alleges that Flom "stated that the school couldn't afford to hire a [full-time] DEI director" and that Simms believed investing in DEI was likely yield "little, if any, improvement." AC ¶¶ 50, 82. The Court is not required to accept, and does not accept, Plaintiff's conclusion that any opposition to "DEI initiatives" supports a plausible inference of racism. Opp. at 10; *see Dane*, 974 F.3d at 188–89 (courts are not required to credit Plaintiff's legal conclusions); *Kalia v. City Univ. of New York*, No. 19-cv-6242 (JMF), 2020 WL 6875173, at *6 (S.D.N.Y. Nov. 23, 2020) (expressly "[d]isregarding conclusory allegations that the school dismantled diversity programs out of racial animus").

Plaintiff's other allegations that purportedly support an inference of racial animus fare no better. Plaintiff insists that she was unfairly labeled "aggressive" in part because of her race. AC ¶ 86; *see id.* ¶ 121. To be sure, the use of a facially race-neutral term such as "aggressive" taken "*in combination with other concrete factual allegations*" might support an inference of racial animus. *Humphries v. City Univ. of New York*, No. 13-cv-2641 (PAE), 2013 WL 6196561, at *9 (S.D.N.Y. Nov. 26, 2013) (emphasis added). However, it is well-established in this Circuit that the use of "critical but facially non-discriminatory terms does not, itself, reveal discriminatory animus" when the speaker himself never "referenced," or otherwise connected the term to, the plaintiff's "skin color." *Id.* (finding no plausible inference of discrimination from allegations that "supervisors and co-workers referred to her using "pejorative words likened to the Angry Black Women Syndrome: 'aggressive', 'agitated', 'angry'. . . among others"); *see Mitchell*, 745 F. Supp. 3d at 94 (finding no plausible inference of discrimination from use of allegedly "racist terms like 'angry,' . . . and 'aggressive'") (collecting cases); *see also Newsome v. IDB Cap. Corp.*, No. 13-cv-6576 (VEC), 2016 WL 1254393, at *14 (S.D.N.Y. Mar. 28, 2016).

Here, "the Amended Complaint merely alleges that" Plaintiff "perceived herself to have

been stereotyped on account of race" because Defendants and others allegedly described her as aggressive. *Humphries*, 2013 WL 6196561, at *9. However, *Plaintiff's* mere "feelings and perceptions of being discriminated against" do not support an inference that *Defendants* harbored racial animus, let alone discriminated against her. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999) (alteration adopted); *see Fisher v. Vassar Coll.*, 70 F.3d 1420, 1439 (2d Cir. 1995) (holding that plaintiff's "'sense of being discriminated against' is not evidence" of discrimination). Indeed, Plaintiff's "subjective belief that her firing was motivated by her race is legally irrelevant." *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 328 (S.D.N.Y. 2020).

Turning to another allegation related to race, Plaintiff alleges that, when she described herself as "the one person of color on the board," Flom "laughed" and "said, 'What are you talking about? You're white.'" AC ¶¶ 73–74; *see id.* ¶ 75 (alleging that Flom said "he'd always seen her as white, and that she was white" and looked "to other members of the board to concur"); *id.* ¶ 132 (indirectly alleging that "Flom had been joking about the fact that Plaintiff was white to him" for "two years"). In her brief, Plaintiff characterizes Flom's comment as "mock[ing]" her "for her race." Opp. at 10. She also criticizes Simms for allegedly "defend[ing] this reprehensible conduct" when Simms stated that he had interpreted Flom to be "saying[,] 'Oh, I didn't know until you told me that you were a person of color.'" AC ¶ 131 (emphasis omitted).

While the Court is required to draw reasonable inferences in Plaintiff's favor, *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015), the Court is not required to accept her conclusion that these allegations support an inference that Defendants intentionally discriminated against Plaintiff based on her membership in a "racial minority," *Felder*, 27 F.4th at 848; *see Dane*, 974 F.3d at 188–89. On the contrary, the Court cannot reasonably infer that Flom harbored animus against Plaintiff and terminated her "*because* she is a woman of color," AC ¶ 183 (emphasis

added), if, in fact, Flom had "always seen [Plaintiff] as white" and continued to believe "she was white," *id.* ¶75, notwithstanding that she "identifies as . . . Brown," *id.* ¶¶ 16, 19, 75. Indeed, other courts in this Circuit have ruled that, in evaluating an employment discrimination claim, "the relevant question is not whether [the plaintiff] is actually Black [or Brown], whatever that term may mean; the inquiry is what the individuals involved in the decision to terminate knew or believed." *Toussaint*, 230 F. Supp. 3d at 213; *see also Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 191 (S.D.N.Y. 2011); *LaBella v. New York City Admin. for Children's Servs.*, No. 02-cv-2355 (NGG), 2005 WL 2077192, at *18 (E.D.N.Y. Mar. 28, 2005) ("even if [the] decision to terminate plaintiff was informed by erroneous facts or mistaken beliefs, it was nevertheless based on non-discriminatory reasons"). Here, Plaintiff's own allegations suggest that Flom did not *believe* that Plaintiff is a "member of a racial minority," as required for a claim under Section 1981. *Felder*, 27 F.4th at 848; *see Toussaint*, 230 F. Supp. 3d at 213; AC ¶¶ 73–75.

In all events, Plaintiff's allegations on this point do not support a plausible inference that Defendants terminated Plaintiff, or took any adverse action against her, in circumstance giving rise to an inference of unlawful discrimination. *Shamciyan*, 2023 WL 6214546, at *5. As an initial matter, Plaintiff's characterization of Flom's alleged comments as "*mocking* her for '*looking white*,'" rather than an articulation of his actual perception, appears only in her brief and, despite her misleading use of quotation marks, does not quote any language that appears in the Amended Complaint. Opp. at 7 (emphases added); *see* AC ¶¶ 73–75, 130–132. At two separate points in the Amended Complaint, Plaintiff suggests that Flom's commentary about his perception of her race was an isolated event that occurred more than two years before Plaintiff was investigated and, thereafter, terminated. *See* AC ¶¶ 71–75, 130. First, Plaintiff explicitly describes the comments as occurring "at the final in-person board meeting before COVID-19" in "February 2020." *Id.* ¶

71. Second, Plaintiff explicitly describes herself saying to Simms, at the June 2, 2022 meeting, that Flom previously "told [her] twice at *a meeting* that he thinks of [her] as white." *Id.* ¶ 130 (emphasis added). However, the Amended Complaint also contains an indirect and conclusory assertion that "Flom had been joking about the fact that Plaintiff was white to him . . . for two years." *Id.* ¶ 132. Construing Plaintiff's allegations in the light most favorable to her, accepting that Flom repeatedly "jok[ed]" that Plaintiff is white and that Simms "*defended* this [purportedly] reprehensible conduct" when he offered a benign interpretation of Flom's comments, *id.* ¶¶ 131–32 (emphasis in original), the alleged facts are obviously insufficient to "nudge" Plaintiff's claim that Defendants terminated her because of her race "across the line from conceivable to plausible," *Vega*, 801 F.3d at 84 (cleaned up).

Plaintiff's remaining allegations related to race include that her "husband, a white man, who was also co-Head of School like her . . . never received any negative response" for conduct similar to hers, including napping during the workday and "speak[ing] his mind." AC ¶¶ 60, 66–68. Plaintiff also alleges that, at some unspecified point in time, "Plaintiff sought to hire a woman of color to operate in a human resources capacity," but the person "was not hired." *Id.* ¶ 88. Plaintiff further asserts, in conclusory fashion, that "Defendants almost always rejected women of color from positions of power." *Id.* ¶ 92.

"A showing of disparate treatment—that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group'—is a recognized method of raising an inference of discrimination." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). Plaintiff's allegations, however, are grossly insufficient to show disparate treatment. While Plaintiff broadly asserts that her husband "never" suffered "any negative response" to his conduct, she specifically

alleges that he was "was constructively terminated shortly after her." AC ¶¶ 60, 147. The Court is not required to credit Plaintiff's general contention that her husband was treated more favorably when her own, more specific allegation contradicts that contention. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011). Furthermore, Plaintiff "a Brown woman," was "Head of School" for "twelve years." AC ¶¶ 16, 20. In light of that fact, Plaintiff's allegation that, at some point, a "woman of color" was not hired for a human resources role, without any further facts or context, does nothing to support the wholly conclusory assertion that "women of color" were generally excluded "from positions of power." *Id.* ¶¶ 88, 92. The Court also notes that, despite her effort to cast the circumstances as evidence of racism, based on her own allegations, Plaintiff in fact "hired" another "woman of color" to a position of leadership—the "Director for DEI"—at some point between May 2021 and June 2, 2022. *Id.* ¶ 89; *see id.* ¶¶ 41, 49, 115, 122.

For all of the reasons set forth above, Plaintiff fails to plausibly allege defendant's "intent to discriminate on the basis of race," as required to state a claim under Section 1981. *Felder*, 27 F.4th at 848. Imagining, *arguendo*, that she plausibly alleges racial animus at all, she nonetheless fails to plausibly allege that her "race was a but-for cause of" her termination or any other adverse employment action. *Comcast*, 589 U.S. at 333. The Amended Complaint is simply devoid of any "connective tissue" linking Plaintiff's protected status with any alleged adverse action. *Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*, No. 19-cv-6034 (JPO), 2019 WL 6916099, at *5 (S.D.N.Y. Dec. 19, 2019). Accordingly, Plaintiff's Section 1981 claim is dismissed.

**2. Plaintiff Fails To State a Claim for Race Discrimination under the NYCHRL.**

As noted above, the NYCHRL provides a more lenient standard than federal discrimination law. *See Mihalik*, 715 F.3d at 109; *Albunio*, 16 N.Y.3d at 477, 947 N.E.2d at 137. In particular, under the NYCHRL, a plaintiff must allege only that she was "treated 'less well' . . . because of a

discriminatory intent." *Mihalik*, 715 F.3d at 110; *see Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 78, 872 N.Y.S.2d 27, 39 (2009). But-for causation is not required. *See Mihalik*, 715 F.3d at 110 n.8; *Weiss v. JPMorgan Chase & Co.*, No. 06-cv-4402 (DLC), 2010 WL 114248, at *1 (S.D.N.Y. Jan. 13, 2010). However, a plaintiff asserting a claim under the NYCHRL must still plausibly allege an illegal "discriminatory motive." *Mihalik*, 715 F.3d at 110; *see Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 127, 946 N.Y.S.2d 27, 40 (1st Dep't 2012) (explaining that a plaintiff must show that "unlawful discrimination was one of the motivating factors, even if it was not the sole motivating factor, for an adverse employment decision"). Thus, "district courts must be mindful that the NYCHRL is not a 'general civility code.'" *Mihalik*, 715 F.3d at 110 (quoting *Williams*, 61 A.D.3d at 79, 872 N.Y.S.2d at 40–41). Pertinent here, "[i]t is not enough that a plaintiff has," or believes she has, an "obnoxious boss." *Mihalik*, 715 F.3d at 110; *see Mitchell*, 745 F. Supp. 3d at 103–04.

For largely the reasons discussed above, Plaintiff fails to state a claim under the NYCHRL. Her allegations, taken together and construed in the light most favorable to Plaintiff, do not support a plausible inference that Defendants acted with "discriminatory intent." *Mihalik*, 715 F.3d at 110. Rather, Plaintiff's allegations support an inference that she found Flom, Simms, and other people with whom she was expected to work professionally "overbearing or obnoxious," and they said much the same of Plaintiff. *Id.*

Plaintiff asserts that Defendants "may very well be a racist [sic]," and "that i[s] something that will be subject to discovery." AC ¶ 95. Plaintiff, however, is incorrect. Her subjective belief and unsupported accusations that Defendants *might* be racist are not sufficient to survive a motion to dismiss. *See Cooper v. Franklin Templeton Invs.*, 2023 WL 3882977, at *2 (2d Cir. June 8, 2023) (affirming dismissal "under the NYCHRL's more liberal standards" because the plaintiff

failed to plausibly allege "discriminatory motive"); *Mitchell*, 745 F. Supp. 3d at 104; *Scalercio-Isenberg*, 2019 WL 6916099, at *6 (dismissing NYCHRL claim because the plaintiff failed to offer "factual allegations sufficient to raise a right to relief above the speculative level") (internal quotation marks and citation omitted); *Humphries*, 2013 WL 6196561, at *12. Accordingly, Plaintiff's claim of race discrimination under the NYCHRL is dismissed.

**3. Plaintiff Fails To State a Hostile Work Environment Claim.**

In connection with her so-called "First Claim," alleging "Race Discrimination," Plaintiff also asserts a hostile work environment theory. AC at 19; *see id.* ¶ 181 ("Defendants subjected Plaintiff to a hostile work environment because she is a woman of color."). Defendants argue that Plaintiff fails to state a claim under either Section 1981 or the NYCHRL because her allegations do not evince discriminatory intent and, at worst, she alleges "[i]solated incidents," rather than "severe and pervasive conduct." Mem. at 14 (quoting *Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 427–28 (S.D.N.Y. 2022)). In response, Plaintiff principally argues that her claim under the NYCHRL survives, stressing that "one comment" may suffice for a hostile work environment under that statute. Opp. at 6–8.

The Second Circuit has held that "Section 1981 provides a cause of action for race-based employment discrimination based on a hostile work environment." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000). To state a claim, the plaintiff must allege that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Id.* (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000)). Courts must consider the totality of the circumstances and "may look to 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance.'" *Bautista*, 642 F. Supp. 3d at 426 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)). Alleged conduct that is "merely offensive or boorish" and "petty slights" are insufficient. *Id*. (quoting *Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 66, 69 (S.D.N.Y. 2015)).

"The NYCHRL does not distinguish between claims of 'discrimination' and 'harassment' or hostile work environment." *Mitchell*, 745 F. Supp. 3d at 106 (quoting *Mitura v. Finco Servs., Inc.*, 712 F. Supp. 3d 442, 452 n.3 (S.D.N.Y. Jan. 22, 2024)); *accord Johnson v. Strive E. Harlem Emp. Grp.*, 990 F. Supp. 2d 435, 445 (S.D.N.Y. 2014); *Doolittle v. Bloomberg L.P.*, No. 22-cv-09136 (JLR), 2023 WL 7151718, at *8 (S.D.N.Y. Oct. 31, 2023) ("Under the NYCHRL, the standard for a hostile-work-environment claim is the same as for a discrimination claim."). Thus, to state a claim under the NYCHRL based on allegedly hostile work environment, the plaintiff must allege that she was "treated less well than other employees because of her protected status[,] or that discrimination was one of the motivating factors for the defendant's conduct." *Chin v. New York City Hous. Auth.*, 106 A.D.3d 443, 445, 965 N.Y.S.2d 42, 44 (1st Dep't 2013). While "even 'a single comment' may be actionable *in appropriate circumstances*," the alleged conduct must, in all events, be linked to the plaintiff's protected characteristic and rise above the level of "petty slights or trivial inconveniences." *Mihalik*, 715 F.3d at 114 (emphasis added) (quoting *Williams*, 61 A.D.3d at 80, 872 N.Y.S.2d at 40–41 & n. 30).

Plaintiff fails to state a claim of a hostile work environment under either Section 1981 or the NYCHRL. In support of this theory, Plaintiff alleges that Flom, Simms, and others called her "aggressive" and that Flom said he thought she was white. Opp. at 6–8; AC ¶¶ 36, 39, 40, 74–75, 86, 87, 121, 130, 132. However, as explained above, Plaintiff fails to allege that Defendants ever linked their use of the term aggressive to her protected characteristics, and Plaintiff's subjective,

unsupported belief that it was used as a racial stereotype is irrelevant. *See Humphries*, 2013 WL 6196561, at *9; *Mitchell*, 745 F. Supp. 3d at 94 (collecting cases); *Farmer*, 473 F. Supp. 3d at 328. Flom's comments that he perceived Plaintiff as white—whether an isolated expression of his sincere belief or a bad joke made more than once—is not by itself sufficient to state a hostile work environment claim under either Section 1981 or the more lenient NYCHRL, which is not a civility code that imposes liability on obnoxious bosses for petty slights. *See Mihalik*, 715 F.3d at 114; *Bautista*, 642 F. Supp. 3d at 426.

Accordingly, for all of the reasons stated above, each cause of action Plaintiff asserts under her so-called First Claim is dismissed.

**B. Plaintiff Fails To State a Claim for Discrimination Based on her Sex or Gender.**

Plaintiff fails to state a claim for discrimination based on her sex or gender. As explained above, the Amended Complaint expressly asserts nine claims, and Plaintiff does not assert a claim for discrimination based on her sex or gender. *See* AC ¶¶ 174–267. Yet, in her opposition to the motion to dismiss, Plaintiff argues that she adequately states a claim for gender discrimination. Opp. at 11. That argument fails.

Plaintiff is not *pro se*. She has been represented by counsel throughout this litigation [ECF No. 2 ("Notice of Appearance by Evan Richardson on behalf of Micaela Bracamonte")]. As such, the Court is not required to liberally construe the Amended Complaint to assert whatever claims Plaintiff's factual allegations suggest she might wish to assert. *See Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) ("pleadings drafted by lawyers" are held to a higher standard than *pro se* pleadings); *Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135, 140 (2d Cir. 2000) (courts "must construe *pro se* complaints liberally," unlike "a complaint submitted by counsel"); *Zanfardino v. City of New York*, 230 F. Supp. 3d 325, 331 (S.D.N.Y. 2017) (explaining that,

because the plaintiff was "represented by counsel," the court would "address[] only those claims which [were] clearly pleaded in the second amended complaint"); *Marquez v. Starrett City Assocs.*, 406 F. Supp. 3d 197, 205 (E.D.N.Y. 2017); *Winter v. Pinkins*, No. 14-cv-8817 (RJS), 2016 WL 1023319, at *4 (S.D.N.Y. Mar. 8, 2016) (Sullivan, J.) ("[T]he Court has no obligation to liberally construe Plaintiff[']s complaint, since it was filed with the assistance of counsel").

"[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." *Lazaro v. Good Samaritan Hosp.*, 54 F. Supp. 2d 180, 184 (S.D.N.Y. 1999) (quoting *O'Brien v. National Property Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989)); *accord In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 562 (S.D.N.Y. 2011) (collecting cases). Indeed, the Second Circuit has squarely held that a plaintiff may not assert a new "claim" or theory of liability "for the first time in her opposition memoranda to the motion to dismiss," even if she cites to allegations in her complaint. *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998); *see also Hansen v. City of New York*, No. 24-cv-2808 (JMF), 2025 WL 588119, at *7 (S.D.N.Y. Feb. 24, 2025) (explaining that "the Court need not consider [plaintiff's] purported hostile work environment claim" where "the Complaint list[ed] separate counts for discrimination and retaliation" but "lack[ed] a standalone hostile work environment claim," even though the pleading used the phrase in some allegations); *Karnauskas v. Columbia Sussex Corp.*, No. 09-cv-7104 (GBD), 2012 WL 234377, at *6 (S.D.N.Y. Jan. 24, 2012) (declining to consider a "claim [that] does not appear anywhere in plaintiff's amended complaint" because plaintiff "has not made a short and plain statement giving [defendants] fair notice of a cause of action . . . and is therefore not entitled to now seek relief on the basis of such a claim"). Accordingly, Plaintiff fails to state a claim for discrimination based on her sex or gender because she simply fails to assert such a claim the Amended Complaint.

In any event, even if the Amended Complaint did purport to assert a sex discrimination claim, Plaintiff would fail to state such a claim. As an initial matter, any such claim would be under the NYCHRL only. "It is . . . settled that Section 1981 does not prohibit discrimination on the basis of gender." *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998).[7] Moreover, many if not most of Plaintiff's allegations under the heading "**Gender and Sex Discrimination**," AC at 3, are facially time-barred. The statute of limitations for claims under the NYCHRL is three years. *See* N.Y.C. Admin. Code § 8-502(d) ("A civil action commenced under this section must be commenced within three years after the alleged unlawful discriminatory practice or act"). Plaintiff filed this action in June 2025 [ECF No. 1]. As such, the "alleged unlawful discriminatory" acts based on Plaintiff's sex or gender from 2012, 2016, 2017, and 2021 are untimely under the statute. N.Y.C. Admin. Code § 8-502(d).

Furthermore, these alleged acts were principally perpetrated by nonparties. For example, Plaintiff alleges that, in 2012, a security guard sexually assaulted her, AC ¶ 25, in 2016, some nonparty attorney "agreed" with someone else that Plaintiff "was 'begging to be checked out" based on her attire," *id.* ¶ 30, and, in 2017, the head of another school sexually harassed Plaintiff, *id.* ¶ 32. Plaintiff suggests that Defendants are liable for these alleged acts by nonparties because "The Lang School board did nothing to remedy or address" them or allegedly asked her "not to make a fuss." *Id.* ¶ 33; *see id.* ¶¶ 26, 31. However, Plaintiff offers no information about who on the Board disregarded her complaints and fails to allege that Flom and Simms were even members of the Board at the relevant times.

Plaintiff also alleges that in 2021 she told Flom "she did not feel safe around [an employee named] Chris," and Flom asked her whether she was "sure" that Chris was "physically and verbally

[7] Plaintiff does not assert any claims under Title VII, which would have required her to file a timely complaint with the Equal Employment Opportunity Commission, which she does not allege she has done.

intimidating" her and asked if there was anything she could "to get along with him[.]" AC ¶¶ 42–44. These allegations, by themselves, are not sufficient to support an inference that Plaintiff was treated less well because of her sex. *See Mihalik*, 715 F.3d at 110; *Williams*, 61 A.D.3d at 78, 872 N.Y.S.2d at 39. Flom merely asking Plaintiff questions about her serious accusations against a subordinate employee is not an adverse action, and Plaintiff offers no factual allegations to suggest that Flom would not have similarly questioned a male leader who accused a subordinate of improper and harassing conduct. Regardless, even if Plaintiff once could have stated claims, in a timely pleading, against The Lang School, based on the allegations that unnamed board members ignored her complaints of sexual assault and sexual harassment, and against Flom, based on the allegations that he questioned Plaintiff's accusations against, and encouraged her to get along with, her subordinate, none of the defendants can now be held liable for facially time-barred claims based events well outside of the statute of limitations. *See Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989).

Turning to other purported allegations of discrimination based on her sex or gender, Plaintiff relies on many of the same alleged facts discussed in connection with her claims of racial discrimination. In particular, Plaintiff speculates that she was unfairly labeled "aggressive" in part because she is a woman. AC ¶¶ 36–37 ("Plaintiff was simply a woman in the workplace with a direct, confident personality, one that was not received well by The Lang School's male-dominated board."). However, Plaintiff does not allege that Defendants ever said anything connecting the criticism of her for being aggressive to her gender. *See Humphries*, 2013 WL 6196561, at *9. As explained above, Plaintiff's subjective belief that she was unfairly stereotyped does not support an inference that Defendants discriminated against her. *See id.*; *Mitchell*, 745 F. Supp. 3d at 94; *Farmer*, 473 F. Supp. 3d at 328.

Plaintiff also generally asserts that Flom "repeatedly chastised" her "for 'not getting along' with white male[s]" who, Plaintiff asserts, "sought to dominate her in ways disconsonant with the school's values or who sought to abuse her." AC ¶ 48. This sweeping accusation against Flom and unspecified other white males is simply "too conclusory to withstand a motion to dismiss." *Mitchell*, 745 F. Supp. 3d at 92 (quoting *Williams v. Westchester Med. Ctr. Health Network*, No. 21-cv-03746 (KMK), 2024 WL 990153, at *9 (S.D.N.Y. Mar. 7, 2024)). Furthermore, the sole specific allegation that Plaintiff offers in the same vein does not help her case.

Plaintiff alleges that "in 2021, a belligerent white, male parent called demanding that his son return to school in person despite not being in compliance with The Lang School's Covid-19 policies." AC ¶ 51. Plaintiff "passed the call onto Defendant Flom at the parent's request," and "Flom later chastised Plaintiff for 'not being able to get along' with the parent." *Id.* ¶¶ 52–53. As the Court has already noted, allegations from 2021 are outside the three-year statute of limitations, since this action was filed in June 2025 [ECF No. 1]. *See* N.Y.C. Admin. Code § 8-502(d). In any case, while Plaintiff reduces the parent to "a belligerent white[] male," she does not allege that Flom criticized Plaintiff for failing to get along with white men. AC ¶ 51; *see id.* ¶ 53. Rather, Plaintiff alleges that Flom criticized Plaintiff for failing to get along with a "parent" at the school. *Id.* ¶ 53. Plaintiff fails to allege that Flom said anything connecting his criticism to the sex of either Plaintiff or the parent. In the absence of such an allegation to support an inference of discriminatory animus, Plaintiff is merely describing Flom giving her feedback about her "poor performance" as the Head of School in dealing with a parent. *Grillo v. New York City Transit Auth.*, 291 F.3d 231, 235 (2d Cir. 2002) (internal citation omitted).

For all of these reasons, any claim of discrimination based on sex or gender that Plaintiff purports to assert is dismissed.

**C. Plaintiff Fails To State Claims of Intersectional Discrimination Based on Race and Sex under Section 1981 and the NYCHRL (Ninth Claim).**

Plaintiff purports to assert claims of "intersectional discrimination" under both Section 1981 and the NYCHRL. AC ¶ 265. She asserts that her "dual protected status as a woman and as a person of color gives a unique rise [sic] to a cause of action for that intersection of protected statuses." *Id*. She alleges that Defendants "terminated" and "belittled" her "because she is a woman of color." *Id*. ¶¶ 263–264. She further alleges that Defendants have a "pattern and practice of terminating and belittling women of color." *Id*. ¶ 266.

The Second Circuit has never recognized a claim of intersectional discrimination under Section 1981. In the context of other discrimination statutes, the Second Circuit has concluded that "where two bases of discrimination exist, the two grounds cannot be neatly reduced to distinct components." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (considering a "sex-plus-age theory of discrimination" where plaintiff asserted claims under Title VII and the ADEA); *see Anderson v. New York City Health & Hosps. Corp*., No. 16-cv-1051 (GBD) (KHP), 2020 WL 2866960, at *11 (S.D.N.Y. Mar. 2, 2020) (report and recommendation that a plaintiff can state a claim for intersectional discrimination under Title VII). However, as explained above, Section 1981 is a race discrimination statute only, which "does not prohibit discrimination on the basis of gender." *Anderson*, 156 F.3d at 170.

In other words, there is no authority for Plaintiff's assertion that her "dual protected status" as "a woman of color" gives rise to "a cause of action" under Section 1981, and there is strong authority that Section 1981 provides no protection for discrimination in connection with being a woman. AC ¶ 265; *see Anderson*, 156 F.3d at 170; *Kayman v. Spirit Halloween Superstores LLC*,

No. 5:25-cv-108 (AJB), 2025 WL 1918029, at *9 (N.D.N.Y. July 11, 2025) ("there is no indication that the Second Circuit has ever recognized a standalone cause of action premised on 'intersectionality'"). Similarly, Plaintiff does not cite any authority for the existence of a claim of intersectional discrimination under the NYCHRL, and the Court is not aware of any such authority. Furthermore, as explained in detail above, Plaintiff fails to plausibly allege that Defendants acted with discriminatory intent, or treated her less well, *because* of her race or sex. "[C]onsideration of [her] [race] discrimination claim in concert with [a] sex discrimination claim . . . does not render [her] desired inference of unlawful discrimination from [her] conclusory allegations" that she was treated unfairly because she was a woman of color "any more plausible." *Bockus v. Maple Pro, Inc.*, 850 F. App'x 48, 52 (2d Cir. 2021).

Accordingly, Plaintiff's purported claims of intersectional discrimination under Section 1981 and the NYCHRL are dismissed.

### D. Plaintiff Fails To State a Claim of Retaliation for Complaints of Race Discrimination under Section 1981 and the NYCHRL (Second Claim), and Plaintiff Fails To State a Claim of Retaliation for Complaints of Gender and/or Sex Discrimination under the NYCHRL (Sixth Claim).

Under the heading **SECOND CLAIM**, Plaintiff asserts claims under Section 1981 and the NYCHRL of retaliation for her alleged complaints of race discrimination. AC at 19. Specifically, Plaintiff asserts that that she "complained about being treated differently based on race" and was "harassed" and "terminated for her complaints of race discrimination." *Id.* ¶¶ 195–97. While, as discussed above, Plaintiff does not assert any claim of discrimination based on sex or gender, under the heading **SIXTH CLAIM**, *id.* at 23, she asserts a claim of retaliation under the NYCHRL for complaints that "she was being discrimination against because of [her] protected status" as "a woman," *id.* ¶¶ 234–35. Specifically, Plaintiff asserts that Defendants "terminated Plaintiff for making these complaints." *Id.* ¶ 236.

To state a claim of retaliation under Section 1981, a "plaintiff must allege '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Trotter v. Nat'l Football League*, 737 F. Supp. 3d 172, 181–82 (S.D.N.Y. 2024) (quoting *Littlejohn*, 795 F.3d at 315–16). "To make out a *prima facie* case of retaliation under the City HRL, [the] plaintiff [is] required to show that '(1) she participated in a protected activity known to defendant; (2) defendant took an action that disadvantaged her; and (3) a causal connection exists between the protected activity and the adverse action.'" *Cadet-Legros v. New York Univ. Hosp. Ctr.*, 135 A.D.3d 196, 206, 21 N.Y.S.3d 221, 230 (1st Dep't 2015) (alterations adopted) (quoting *Fletcher v. Dakota, Inc.*, 99 A.D.3d 43, 51–52, 948 N.Y.S.2d 263 (1st Dep' t 2012)). Plaintiff fails to satisfy either test because she fails to plausibly allege a connection between her alleged protected activity and her termination or any alleged harassment.

In particular, Plaintiff's own allegations suggest that "the wheels were already in motion to terminate" her *before* she engaged in any protected activity. *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 368 (2d Cir. 2025). Plaintiff expressly concedes that she "was terminated based on the outcome of an investigation into her." Opp. at 9. The Amended Complaint makes clear that Plaintiff was informed of the investigation on April 10, 2022. *See* AC ¶¶ 97, 104. Plaintiff identifies two instances in which she allegedly engaged in protected activity, the first of which might have occurred after the investigation began and the second of which clearly occurred after the investigation began. First, Plaintiff alleges that, on an unspecified date "[i]n April 2022," Plaintiff told Simms "that if The Lang School had an HR department, she would be reporting him for what seemed to be sexist and racist remarks . . . ." *Id.* ¶ 96. Second, Plaintiff alleges that, two months later, on June 2, 2022, she "complained that there [was] 'a certain amount of racism

involved'" and "'a certain amount of sexism involved'" in Defendants' treatment of her. *Id.* ¶¶ 115, 117–18. She also informed the Board that, if they did not "agree" with her, it was "a function of the fact" that they were "all white and . . . mostly men." *Id.* ¶ 119. Insofar as both instances of Plaintiff's alleged complaints of racism and sexism occurred after Defendants had initiated the investigation that led to her termination, Plaintiff fails to state a *prima facie* case of retaliation. *See Nambiar*, 158 F.4th at 368.

Plaintiff argues that the investigation was conducted in an unfair manner and concluded in her termination after she complained. *See* Opp. at 9. Specifically, she alleges that her request for "additional time to comply with the investigation" was denied and that the investigator did not interview (or did not properly question) "Plaintiff's witnesses" because "Defendants were simply trying to generate a reason to terminate Plaintiff." AC ¶¶ 111–14. These allegations do not salvage Plaintiff's claims, however. The Second Circuit has explained that "an inference of retaliation does not arise" if a "gradual adverse job action[] began" before "any protect activity." *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 95 (2d Cir. 2001).

Indeed, drawing all inferences in Plaintiff's favor and, therefore, assuming that Plaintiff's first complaint, "[i]n April 2022," preceded the beginning of the investigation of which she was informed on April 10, 2022, the Court nonetheless concludes that Plaintiff fails to plausibly allege a connection between her alleged protected activity and an adverse action. AC ¶ 96. Plaintiff's own express position is that Defendants terminated her because of "her personality." Opp. at 8. In other words, based on Plaintiff's own allegations, her termination "was a '*fait accompli*'" before she complained of racism and sexism. *Nambiar*, 158 F.4th at 368.

More particularly, Plaintiff repeatedly alleges that, for years, Flom, Simms, the prior Board chair, and others affiliated with The Lang School "repeatedly and constantly" criticized Plaintiff

for being "aggressive" and not getting along with stakeholders in the school, such as staff members and parents. AC ¶ 36; *see id.* ¶¶ 38, 40 (alleging that, at some point before 2020, the Board chair at the time "said 'you . . . have to apologize for . . . being aggressive yet again, and you're skating on thin ice at this point'"), 48, 53–54, 68, 86, 87. The Court has already ruled that, notwithstanding Plaintiff's insistence to the contrary, these criticisms do not raise a plausible inference of illegal animus. Rather, the numerous allegations in the Amended Complaint support the statement in Plaintiff's brief that the "basis for Plaintiff's termination was her personality," Opp. at 8, rather than illegal discrimination or retaliation.

Plaintiff further alleges that, after she complained of racism and sexism on June 2, 2022, Flom "screamed" at her, which Plaintiff contends was retaliatory harassment. AC ¶ 125; *see* Opp. at 9. While it is possible to allege retaliation based on a "ratcheting up" of "discrimination or harassment," Plaintiff fails to offer any such allegations. *Garrison v. American Sugar Ref., Inc.*, 789 F. Supp. 3d 291, 311 (S.D.N.Y. 2025). According to Plaintiff, Flom "yelled[:] 'I'm not putting up with this crap anymore. Everybody lets you do whatever the [expletive] you want all the time. You terrorize the staff. It's ridiculous. You don't take criticism. And everybody says this. Everybody.'" *Id.* ¶ 126. Assuming that this response constitutes an adverse action, Flom's alleged statements on June 2, 2022 are simply of a piece with his criticisms of Plaintiff long before she ever allegedly complained of racism of sexism.

Accordingly, because Plaintiff fails to plausibly allege a connection between an alleged protected activity and an alleged adverse action, her claims of retaliation for complaints of discrimination based on race and sex are dismissed.

### E. Plaintiff's Claims of Disability Discrimination under the NYCHRL Are Dismissed (Third Claim and Fourth Claim).

Plaintiff asserts two claims of disability discrimination under the NYCHRL. Specifically,

the Third Claim in the Amended Complaint is that Defendants "refused to provide Plaintiff with accommodations." AC ¶ 206. Plaintiff's Fourth Claim is that she "was terminated as a result of her disability" in violation of the NYCHRL. AC ¶ 215.

In general, to state a claim of disability discrimination under the NYCHRL, a plaintiff must allege that (1) "her employer is subject to the NYCHRL," (2) "she was disabled within the meaning of the [statute]," (3) "she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation," and (4) "she suffered an adverse employment action because of her disability." *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 301 (S.D.N.Y. 2019) (alteration adopted) (quoting *Gioia v. Forbes Media LLC*, No. 09-cv-6114 (RJS), 2011 WL 4549607, at *9 (S.D.N.Y. Sept. 30, 2011)); *see Hosking v. Mem'l Sloan-Kettering Cancer Ctr.*, 186 A.D.3d 58, 62, 126 N.Y.S.3d 98 (2020); *see also Snowden v. Trs. of Columbia Univ.*, 612 F. App'x 7, 10 (2d Cir. 2015). To state a claim "based on failure to accommodate," the plaintiff must allege—in addition to statutory coverage and disability—that "with reasonable accommodation, [she] could perform the essential functions of the job at issue," and "the employer has refused to make such accommodations." *Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51, 73 (S.D.N.Y. 2016). In all events, the plaintiff must allege that her "disability is known or should have been known by" the defendant. *Romanello v. Intesa Sanpaolo, S.p.A.*, 22 N.Y.3d 881, 885, 998 N.E.2d 1050 (2013); *see* N.Y.C. Admin. Code § 8-107(15).

Defendants do not contest the applicability of the NYCHRL or that Plaintiff's alleged disabilities fall within the statute. Plaintiff alleges that, at all relevant times, she had "ADHD, Dysgraphia (which inhibits her ability to hand write), and Generalized Anxiety Disorder." AC ¶ 17. At some point, she allegedly suffered from "pernicious anemia," but an unspecified "medical procedure alleviated" this problem at an unspecified time. *Id.* ¶ 59. Plaintiff also alleges that, in

2020, she "was involved in a severe car accident that led to concussions [sic], broken bones, and her sense of balance and directional hearing [being] impaired." *Id.* ¶ 136. She generally asserts that she "made known" that she was disabled. *Id.* ¶¶ 204, 214.

Plaintiff alleges that "Defendants, in part, made the decision to terminate Plaintiff based on the report about her 'naps' at work," *id.* ¶ 61. Plaintiff asserts in the Amended Complaint that her practice of sleeping "during the workday" was necessary "was to clear her mind, and mitigate her ADHD and other disabilities," including her alleged anemia, until she had the procedure that "alleviated the need for the practice." *Id.* ¶¶ 59, 63. However, while Plaintiff asserts in this litigation that her daily nap "was an accommodation for her disabilities," she fails to allege that she ever requested or made known that she needed naptime as an accommodation for a disability or that this should have been obvious to Defendants. *Id.* ¶ 65.

Plaintiff cannot state a claim for disability discrimination simply by asserting, *post hoc*, that a "disability caused the behavior for which the employee was terminated." *Jacobsen v. New York City Health & Hosps. Corp.*, 22 N.Y.3d 824, 834, 11 N.E.3d 159 (2014); *see Costabile v. New York City Health & Hosps. Corp.*, 951 F.3d 77, 82 (2d Cir. 2020) (affirming 12(b)(6) dismissal where, although the defendants knew the plaintiff had taken prior disability leave, he failed to "allege that he ever requested [a particular] accommodation from Defendants, either formally or informally"); *Whitehurst v. 1199SEIU United Healthcare Workers E.*, 928 F.3d 201, 204 (2d Cir. 2019) (affirming dismissal, albeit in a different context, where terminated employee "informed the [employer], for the first time [after her termination], that her two incidents of sleepiness were caused by her sleep apnea"); *McElwee v. Cnty. of Orange*, 700 F.3d 635, 644 (2d Cir. 2012) (rejecting a disability discrimination claim that was, in effect, "a request to excuse [the plaintiff's] past misconduct"). Rather, Plaintiff must plausibly allege that Defendants knew or

should have known that a disability caused her to sleep during working hours and she needed an accommodation. *See Romanello*, 22 N.Y.3d at 885. Plaintiff here does not allege that she ever told Defendants she needed to schedule a daily nap during school hours as an accommodation for her ADHD, anemia, or other disability. Rather, her own allegations imply that Defendants only learned of "her 'naps' at work" because of a "report" from employees, who, Plaintiff alleges, complained about the practice. AC ¶ 61; *see id.* ¶ 58.

Moreover, even if Plaintiff generally "made known" to Defendants that she suffered from one or more of her alleged disabilities,[8] this is not a case in which it should have been "obvious" to Defendants that she was sleeping at school as a result of those disabilities, *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008). Indeed, Plaintiff expressly alleges that her husband "also slept for half an hour during the workday," which she does not suggest was the result of any disability. AC ¶ 60. Furthermore, New York law "does not immunize disabled employees from discipline or discharge for incidents of misconduct in the workplace." *Hazen v. Hill Betts & Nash, LLP*, 92 A.D.3d 162, 170, 936 N.Y.S.2d 164, 171 (1st Dep't 2012) (quoting *Valentine v. Standard & Poor's*, 50 F. Supp. 2d 262, 286 (S.D.N.Y. 1999), *aff'd*, 205 F.3d 1327 (2d Cir. 2000)). "Nor is the employer required to retroactively excuse the misconduct as an accommodation." *Id.* at 171. As such, Plaintiff cannot state a claim for disability discrimination based on Defendants' alleged decision to terminate her, in part, for sleeping at work and her own *ipse dixit* that she needed to do so to "mitigate" alleged disabilities. AC ¶¶ 61, 63.

Turning to her other allegations of disability discrimination, Plaintiff alleges that "one basis for her termination was that she had been late to work." AC ¶ 139. She alleges that, "since the

[8] Drawing all reasonably inferences in her favor, Plaintiff adequately alleges that, at some point, she informed Defendants of her alleged ADHD, dysgraphia, anxiety, and consequences of her car accident. *See* AC ¶¶ 102, 106, 109. However, nothing in the Amended Complaint indicates that Plaintiff ever advised Defendants of her alleged anemia, let alone that it caused her to sleep during the workday.

school's opening," Plaintiff "had announced the need" to arrive at school "between 9 and 9:30 am," even though the "teachers started at 8:00 am," because of "her ADHD and Generalized Anxiety Disorder" (and because she worked late). *Id.* ¶¶ 106, 108. She does not specify whether she informed Defendants (as opposed to staff) of her need to arrive late because of her disabilities or whether she was in fact allowed to do so.

Plaintiff separately alleges that she "would intermittently request late arrivals in order to attend physical and occupational therapy sessions at NYU Langone's Concussion Center." AC ¶ 109. She alleges that these "requests were denied and complained about by staff and the board." *Id.* ¶ 110. Plaintiff further alleges that her efforts to have "remote occupational and physical therapy sessions in the school's gym" were unsuccessful because school staff and students would interrupt her sessions. *Id.*

Drawing all inferences in Plaintiff's favor, as the Court is required to do, Plaintiff arguably states claims of disability discrimination, based on an adverse employment action and based on failure to accommodate, in connection with her requests for late arrivals. *See McMillan v. City of New York*, 711 F.3d 120, 129 (2d Cir. 2013) (dismissal was "premature" where plaintiff "was tardy because of his disability and . . . was disciplined because of his tardiness"). The Court, however, "decline[] to exercise pendent jurisdiction over" these NYCHRL claims because all of Plaintiff's "federal claims are eliminated" in this Opinion and Order. *Klein & Co. Futures v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006). Thus, Plaintiff's claims under the NYCHRL of disability discrimination related to late arrivals that she alleged requested as an accommodation for alleged disabilities, *see* AC ¶¶ 106, 109, are dismissed without prejudice.

Plaintiff separately alleges that Defendants refused her requests for accommodations at the meeting on April 10, 2022, during which Defendants informed her that she was being investigated

for misconduct. *See* AC ¶¶ 100–01. In particular, Plaintiff alleges that she "requested a limited accommodation in the form of recording the conversation" and asked that Defendants send her certain documents, citing her ADHD, anxiety, and dysgraphia. *Id.* ¶¶ 100–02. She alleges that "Defendants denied these requests in full without justification." *Id.* ¶ 101. This claim, which Plaintiff brings under the NYCHRL, is likewise dismissed without prejudice to Plaintiff's filing a lawsuit in state court.

### F. Plaintiff Fails To State a Claim of Retaliation for Complaints of Disability Discrimination under the NYCHRL (Fifth Claim).

Under the heading "**FIFTH CLAIM**," Plaintiff purports to assert a claim of **"[r]etaliation for complaints of disability discrimination**" under the NYCHRL. AC at 22 (emphases in original). However, the Amended Complaint is wholly and utterly devoid of factual allegations about complaints of disability discrimination. Plaintiff does not identify a single instance in which she allegedly complained that she was being discriminated against based on a disability. Her purely conclusory assertion that she "complained," in reciting the elements of her purported Fifth Claim, is not enough. *Id*. ¶ 226; *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Dane*, 974 F.3d at 188–89 (courts need not credit conclusory allegations). Thus, Plaintiff's claim of retaliation for nonexistent complaints of disability discrimination is dismissed. *See Cadet-Legros*, 135 A.D.3d at 206, 21 N.Y.S.3d at 230 (plaintiff must allege that she engaged in a protected activity known to the defendant to state a claim for retaliation under the NYCHRL).

### G. Plaintiff Fails To State Claims of Age Discrimination (Eighth Claim).

Plaintiff asserts claims of age discrimination under the ADEA and the NYCHRL. *See* AC at 25. To state a claim for age discrimination under the ADEA, a plaintiff must "plausibly allege that [her] age was the but-for cause of [her] termination" or other adverse employment action.

*Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 306 (2d Cir. 2021); *see Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009) ("age" must be "the 'but-for' cause of the employer's adverse action"). Put another way, the plaintiff must allege facts plausibly suggesting "that age was the 'reason' that the employer decided to act." *Gross*, 557 U.S. at 176. To state a claim under the NYCHRL, a plaintiff must plausibly allege that she was treated less well, in a nontrivial way, because of her age. *See Boonmalert v. City of New York*, 721 F. App'x 29, 33 (2d Cir. 2018); *Sabic-El-Rayess v. Tchrs. Coll., Columbia Univ.*, 758 F. Supp. 3d 268, 277 (S.D.N.Y. 2024) ("to survive a motion to dismiss claims under . . . the ADEA[] and the NYCHRL, the facts alleged must provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent'") (quoting *Littlejohn*, 795 F.3d at 311).

Plaintiff fails to plausibly allege that her "age was the but-for cause of [her] termination" or that Defendants treated her less well because of her age. *Lively*, 6 F.4th at 303; *Boonmalert*, 721 F. App'x at 33. The Amended Complaint includes purely conclusory assertions that Plaintiff was terminated because of her age, *see* AC ¶¶ 251–52, and that, "[a]t about the time Plaintiff was terminated, Defendant[s] began to 'clean house' of older employees," *id.* ¶ 145. The only non-conclusory factual allegations Plaintiff offers are that she "was 57 at the time of her termination," that her "husband, who was over forty, was constructively terminated shortly after her," that, "upon information and belief," another employee over forty was "terminated, or constructively terminated, shortly after" Plaintiff, and that, about one year later, a teacher who "was over forty, was terminated." *Id.* ¶¶ 15, 147–49.

Plaintiff offers no allegations whatsoever connecting her age to her own termination or any alleged mistreatment of her.[9] To be sure, an alleged "general practice of discrimination" based on

[9] Furthermore, while the Court is mindful that plaintiffs may plead alternaive theories, the Court cannot reasonably infer that Plaintiff's age was the but-for cause of her termination when the Amended Complaint is filled with other

age "may be highly relevant" to support an inference of "individual disparate treatment." *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 150 (2d Cir. 2012). However, Plaintiff's barebones allegations that three employees over forty were terminated, or constructively terminated, with no particularization or relevant facts, over the course of a year after Plaintiff's termination, in the absence of any other context, are wholly insufficient to raise "more than a sheer possibility" that Defendants did anything improper. *Iqbal*, 556 U.S. at 678. As such, Plaintiff's claims of age discrimination are dismissed.

**H. Plaintiff Fails To State a Claim of Breach of Contract (Seventh Claim).**

Finally, Plaintiff asserts a contract claim against The Lang School only. Plaintiff contends that she "loaned" The Lang School money in the form of "deferred salaries." AC ¶ 239. In particular, "Plaintiff and her husband forwent approximately $700,000 in underpayment and nonpayment of salary in the school's early years . . . ." *Id.* ¶ 155. Years later, in September 2019, the Board "held a formal meeting in which the Board confirmed a 'promise to pay back such funds' when economically feasible." *Id.* ¶ 156. However, "[t]he Board . . . has not repaid[] this amount to Plaintiff." *Id.* ¶ 170.

To state a claim for breach of contract under New York law, a plaintiff must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant, and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 177 (2d Cir. 2004); *see 34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52, 198 N.E.3d 1282, 1287 (2022). Plaintiff fails at the first step. She does not plausibly allege the existence of an enforceable contract.

"To establish the existence of an enforceable agreement, a plaintiff must establish an offer,

---

reasons Defendants allegedly terminated Plaintiff, including her practice of sleeping at work and Defendants' alleged perception of Plaintiff as aggressive and unable to get along with stakeholders in the school.

acceptance of the offer, consideration, mutual assent, and an intent to be bound." *Kasowitz, Benson, Torres & Friedman, LLP v. Reade*, 98 A.D.3d 403, 404, 950 N.Y.S.2d 8, 9 (1st Dep't 2012), *aff'd*, 20 N.Y.3d 1082, 987 N.E.2d 631 (2013). Here, Plaintiff expressly alleges that, in the early years after she founded The Lang School in 2009, she and her husband voluntarily "forewent" compensation "[t]o support the school" and "prevent [its] financial ruin." AC ¶ 153. She alleges that, nearly a decade later, the Board voted to repay Plaintiff "when economically feasible." *Id.* ¶ 156. These alleged facts are insufficient to establish consideration.

That is, "generally, past consideration is no consideration and cannot support an agreement because the detriment did not induce the promise." *Lebedev v. Blavatnik*, 193 A.D.3d 175, 183, 142 N.Y.S.3d 511, 517 (1st Dep't 2021) (quoting *Korff v. Corbett*, 155 A.D.3d 405, 408, 65 N.Y.S.3d 498, 502 (1st Dep't 2017)). In other words, the Board's vote to pay Plaintiff for prior years of voluntary undercompensation, unilaterally undertaken, "cannot support" an enforceable contract because it was not induced by valuable consideration. *Id.* Section 5–1105 of the General Obligations Law establishes an exception to the general rule against past consideration, but it requires, *inter alia*, a "writing [that] contain[s] an unequivocal promise to pay a sum certain, at a date certain." *Umscheid v. Simnacher*, 106 A.D.2d 380, 381, 482 N.Y.S.2d 295, 297 (2d Dep't 1984). An alleged promise to pay "when economically feasible" does not suffice. *Id.* ¶ 156.

Accordingly, because Plaintiff fails to allege the existence of an enforceable contract, her breach of contract claim is dismissed.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss the Amended Complaint [ECF No. 14] is GRANTED. All of Plaintiff's claims are dismissed with prejudice except her claims of disability discrimination based on alleged requests for late arrivals and accommodations

in connection with the April 2022 investigation into her, which claims are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate docket entry number 14 and to close this case.

**SO ORDERED.**

**Date: September 15, 2026**
**New York, NY**

Mary Kay Vyskocil

**MARY KAY VYSKOCIL**
**United States District Judge**